UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:19CR351 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| BENJAMIN ROSS, | ) | |
| | ) | |
| Defendant. | | **ORDER** |

This matter comes before the Court on a motion to suppress (Doc. 24) filed by Defendant Benjamin Ross. The Government timely opposed the motion, and the Court conducted an evidentiary hearing on September 23, 2019. Upon review of the relevant findings, the evidence introduced at the hearing on this matter, and applicable law, Ross's motion to suppress is DENIED.

I.   FACTS

On May 15, 2019, Sergeant Alan Dunbar initiated a traffic stop of Ross's vehicle near the intersection of Lowell Avenue and Southern Boulevard in Youngstown, Ohio. Upon initiating the traffic stop, Sergeant Dunbar informed Ross that he had been pulled over for the darkness of his window tint and the late use of his turn signal. Sergeant Dunbar testified that during his initial interaction with Ross, Ross was very nervous. Ross avoided eye contact and Sergeant Dunbar "advised him that [he] could practically see his heart beating through his shirt[.]" Sergeant Dunbar then requested that Ross step out of the vehicle and requested permission to perform a pat-down of Ross's person. Ross consented to the pat-down. No weapons or contraband were found during the pat-down.

While Sergeant Dunbar again explained the reasons that Ross had been pulled over, Trooper James Baker appeared on scene with drug-detection dog, Rexey. Rexey alerted on the driver's side of the vehicle near the rear door. Based upon that alert, the officers searched the vehicle. Specifically, they searched a child's toy train package that was sitting on the back seat of the vehicle. Inside the child's toy box, the officers found a vacuum-sealed bag. The bag contained several hundred blue pills that ultimately were determined to be 117 grams of fentanyl.

Ross has sought to suppress the evidence seized from the vehicle, evidence obtained from a subsequent search of his cell phones, and his statements. The Court now reviews his arguments.

## II.    LAW & ANALYSIS

It is well-settled that a traffic stop is proper "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring," *United States v. Palomino*, 100 F.3d 446, 448 (6th Cir. 1996), and therefore a defendant's traffic violations are more than sufficient probable cause to initiate a stop. *See also United States v. Puckett*, 422 F.3d 340 (6th Cir. 2005). "Probable cause is defined as 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion.'" *United States v. Smith,* 182 F.3d 473, 477 (6th Cir. 1999) (quoting *United States v. Bennett,* 905 F.2d 931, 934 (6th Cir. 1990)).

Applicable Ohio law requires window tinting to allow at least fifty percent of the light to pass through. *See* Ohio Rev. Code § 4513.241; Ohio Admin. Code § 4501–41–03(A)(3). Sergeant Dunbar, based on his substantial prior experience, believed that upon observation that Ross's windows violated that standard. These facts alone provide a proper basis for the initial stop. *See United States v. Shank*, 543 F.3d 309, 313 (6th Cir. 2008)("Due to the officers' familiarity with window tinting and their estimate that the vehicle was tinted substantially darker

than permitted by law, we agree with the district court's determination that the officers had a proper basis to initiate the traffic stop.). A later test revealed that Sergeant Dunbar was correct and that the window tinting allowed only 6% of light to pass through.

Ross appears to take issue with Sergeant Dunbar's observation by asserting that the driver's window was rolled down when any observation could have occurred. While the dash camera appears to substantiate this view, Ohio law does not limit its application to the driver's side window. Section 4513.241 makes it unlawful to use tinted glass in "windshields, side windows, sidewings, and rear windows[.]" The dash camera reveals that prior to initiate the traffic stop, Sergeant Dunbar had ample opportunity to observe and evaluate the rear side window on the driver's side of the vehicle as well as the back window of the vehicle. Accordingly, the fact that the driver had his window rolled down has no impact on the ability of Sergeant Dunbar to ascertain that the vehicle appeared to have improperly tinted windows.

In addition, Sergeant Dunbar's dash camera supported his testimony that Ross's use of his turn signal did not occur until his turn on Southern Boulevard was essentially complete. Sergeant Dunbar's direct observation of this fact provided an additional, independent reason that justified the traffic stop. Ohio law provides: "When required, a signal of intention to turn or move right or left shall be given continuously during not less than the last one hundred feet traveled by the vehicle … before turning[.] Ohio Rev. Code. § 4511.39(A). The dash camera footage suggests that Ross did not utilize his turn signal until *after* his movement left on Southern Boulevard was nearly complete. Accordingly, Sergeant Dunbar had ample reason to initiate the traffic stop.

The Court also finds no merit in any challenge to the search of Ross's vehicle. A warrantless search of an automobile is permissible if probable cause exists to believe it contains

evidence of a crime. *United States v. Ross*, 456 U.S. 798, 809 (1982). There is probable cause to justify a warrantless search of a vehicle once a properly trained and reliable drug detection dog alerts positively to the presence of drugs. *United States v. Hill*, 195 F.3d 258, 273 (6th Cir. 1999). The evidence and testimony herein revealed that Rexey and his handler arrived on scene within roughly three minutes of the stop beginning. Rexey then alerted within 30 seconds of beginning his sniff of the vehicle.

Initially, the Court notes that the Sixth Circuit has noted that reasonable suspicion is not required to perform a canine inspection of the exterior of a vehicle because no legitimate privacy interests are impacted. *United States v. Perez*, 440 F.3d 363, 375 (6th Cir. 2006). Accordingly, the Court need not analyze whether Sergeant Dunbar's observations of Ross's nervous behavior were sufficient to justify the canine sniff. Moreover, there is no dispute based on the testimony provided that Rexey is a "well-trained and reliable drug dog[]" and therefore his "positive alerts provided the necessary probable cause to justify the warrantless search[.]" *Id.*

The record also does not support any contention that the canine sniff improperly extended the duration of the traffic stop. Once officers use "all of the appropriate means available to them to allay their concerns of criminal activity," they may not further detain a suspect absent probable cause. *United States v. Heath*, 259 F.3d 522, 530 (6th Cir.2001). Herein, Sergeant Dunbar did not delay his own activities in any manner while the search was performed. When Rexey alerted, Sergeant Dunbar had not yet verified Ross's identity, checked for active warrants, or completed his citation. Accordingly, it cannot be said that the canine sniff improperly extended the duration of the traffic stop.

To the extent that Ross's initial motion challenged the search of his phones, the Court finds no merit in any argument made in support of that contention. The record reveals that the

phones were not searched until after a warrant was obtained from a neutral magistrate judge. Ross has not challenged that process, and the Court finds no basis to suggest that the warrant was improperly obtained. Accordingly, Ross's final argument also lacks merit.

### III. CONCLUSION

For the reasons set forth herein, Defendant Benjamin Ross's motion to suppress is DENIED.

IT IS SO ORDERED.


Date: October 15, 2019            */s/ Judge John R. Adams*
                                         JUDGE JOHN R. ADAMS
                                         UNITED STATES DISTRICT COURT